KING, C.J.,
for the Court.
¶ 1. This action arises from a complaint filed by Trustmark National-Bank against Robert R. Patterson, Jr. and Mid-South Investment Corporation for judicial foré-closure and other relief in the Chancery Court of the First Judicial District of Hinds County, Mississippi. The chancellor ordered that Trustmark recover from Patterson and Mid-South, jointly and severally, $96,831, plus interest at the rate of 4.695% per annum from April 9, 2001 until paid in full. The chancellor ordered that Patterson and Mid-South pay attorney’s fees, expenses and court costs in the amount of $24,207.75. Patterson and Mid-South now appeal that decision, raising the following issue which we quote verbatim:
Did the trial judge commit reversible error in his finding of fact in his ruling in favor of the plaintiff?
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Sherra Slaughter, a’ warehouse lending officer[1] at Trustmark, received a funding request from Mid-South for its borrowers (Swims and Ives). The loans totaled $96,831. According to Slaughter, she made the deposit on April 9, 2001. Inadvertently, Slaughter transposed the numbers when she wrote out the deposit ticket. In writing the account number on the deposit ticket, Slaughter wrote down “21” instead of “12.” On April 10, a loan check drawn on the account “hit in overdraft” because there were not any funds in the account at the time.
¶ 4. Upon researching the matter, Slaughter realized that the April 9 deposit did not show up in the account. In an attempt to correct her mistake, Slaughter made another deposit for the account and *794 waited for the ticket to come back from the proof department.
¶ 5. According to Rick Miller’s (first vice president and mortgage financial officer of the mortgage department at Trustmark) testimony, deposit slips are forwarded to the proof department which then deposits funds into the account. The proof department realized Slaughter’s error and rather than sending the deposit slip back to her, made the deposit into the account.
¶ 6. Approximately a week later, Slaughter realized that the $96,831 had been deposited twice into Mid-South’s account. In September 2002, Slaughter attempted to do a month-to-month review of Mid-South’s account from April 2001 through January 2002. She indicated that the review reflected that the deposit had been made twice, but the additional deposit had not been collected.
¶7. On September 23, 2002, Patterson wrote to Miller indicating that a review of Mid-South’s warehouse accounts had been made and that a double deposit of $96,831 had been made by Trustmark on April 10, 2001. Patterson asked that Miller allow them to settle the error at a substantial discount.
¶ 8. On February 11, 2003, Trustmark filed a complaint against Patterson and Mid-South seeking to have Patterson declared personally liable for all indebtedness of Mid-South Investment Corporation and to seek a judgment against the parties. The matter was tried on September 15 and 22, 2003. The chancellor found that Trustmark over-credited Mid-South’s account in the amount of $96,831 by placing an advance on the line of credit twice for the same loans. The chancellor determined that Patterson had executed a continuing guaranty and a revolving master note to secure the line of credit for Mid-South. The chancellor held that Patterson and Mid-South were therefore jointly and severally liable to Trustmark.
ISSUE AND ANALYSIS
Did the trial judge commit reversible error in his finding of fact in his ruling in favor of the plaintiff?
Standard of Review
¶'9. “A chancellor sits as a fact-finder and in resolving factual disputes, is the sole judge of the credibility of witnesses.” Hopper v. Hopper, 773 So.2d 395(¶ 16) (Miss.Ct.App.2000). This Court will not set aside a chancellor’s finding of fact or disturb it on appeal unless the finding is manifestly wrong or it is not supported by substantial credible evidence. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997).
¶ 10. In reaching a decision, the chancellor had before him (1) the continuing guaranty executed by Patterson, which provided, “I do furthermore bind and obligate myself, my heirs and assigns, jointly and severally, with said debtor, for the payment of the said indebtedness precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to, and holding myself and my heirs and assigns, by all terms and conditions contained in any note or notes signed by said debtors, making myself a party thereto,” (2) the revolving master note, (3) the testimony of the bank employees that this money had been twice deposited to the account of Mid-South, and (4) the testimony of the bank employees that the extra deposit had-not been recovered by Trust-mark. The chancellor found this evidence to be credible, and rendered judgment for Trustmark. Because that decision is supported by substantial credible evidence, this Court must defer to it. Bredemeier, 689 So.2d at 775. While Patterson and Mid-South argue that the testimony pre *795 sented by Slaughter contradicted the chancellor’s findings, it is important to note that we do not require the chancellor’s findings to be uncontradicted, but merely to be supported by substantial credible evidence. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994). Those findings are supported by substantial credible evidence, and this Court affirms the chancellor’s decision.
¶ 11. THE JUDGMENT OF THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. According to the Bank and Stock Exchange Encyclopedia at www. encyclopedia -wiki.org, a warehouse lender is a short-term lender for mortgage bankers, who provides interim financing until the mortgage is sold to a permanent investor. Slaughter'is in charge of the warehouse lending operations. Her duties include taking requests and making deposits based on the requests, sending and receiving wires for the payments on warehouse loans, and collecting interest and fees on a monthly basis for the loans.